UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
In re:                                  )
                                        )      Case No. 18-00161
CAPITOL CITY BREWING COMPANY, L.C.,     )      Chapter 11
                                        )
            Debtor.                     )
_____)

**FIRST AMENDED
JOINT CHAPTER 11 PLAN OF REORGANIZATION
OF CAPITOL CITY BREWING COMPANY, L.C.**

**INTRODUCTION**

Capitol City Brewing Company, L.C. (the "Debtor") and the Official Committee of Unsecured Creditors ("Committee" and collectively with the Debtor, the "Plan Proponents") propose the following joint Chapter 11 Plan (the "Plan") of reorganization pursuant to Chapter 11 of title 11 of the United States Code. The Plan provides for the resolution of the allowance of claims and equity interests, and the distribution to creditors in accordance with the priorities of the Bankruptcy Code.

**ARTICLE I – DEFINITIONS**

In addition to such other terms as are defined elsewhere in the Plan or in the Bankruptcy Code (as hereinafter defined), the following terms as used in the Plan (which appear in the Plan as capitalized terms) shall have the meanings set forth in § 1.2 herein.

1.1.    **Scope of Definitions**.  For purposes of the Plan, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of the Plan.  Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.  The words "herein," "hereof," "hereunder," and other words of similar import refer to the Plan as a whole, not to any particular section, subsection or clause, unless the context requires otherwise.  Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter.

1.2    **Definitions.**  The following terms shall have the meanings indicated when used in capitalized form in this Plan.

1.2.1.  *Administrative Expense Claim* means any Claim for an administrative expense of the kind described in § 503(b) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses of preserving the Debtor's Estate and operating the Debtor's

business incurred after the Petition Date, Claims for fees and expenses pursuant to §§ 330 and 331 of the Bankruptcy Code (covering the period through the Effective Date), and fees, if any, due to the United States Trustee under 28 U.S.C. § 1930(a)(6).

1.2.2.  *Allowed Administrative Expense Claim* means an Allowed Claim under 11 U.S. C. § 503(b) that is entitled to priority under 11 U.S.C. §507(a)(2).

1.2.3.  *Allowed Claim* means a Claim or any portion thereof (a) that has been allowed by a Final Order of the Bankruptcy Court; (b) as to which, on or by the Effective Date (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is scheduled, other than a Claim that is scheduled at zero or as disputed; (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order of the Bankruptcy Court; or (d) that is expressly allowed in a liquidated amount in the Plan.

1.2.4.  *Allowed Equity Interest* means an Equity Interest for which either no objection to its allowance has been filed or, if any objection has been filed, such objection has been denied or withdrawn or the Equity Interest fixed as to share and/or amount by a Final Order.

1.2.5.  *Assets* means all the assets of the Debtor and its Estate, including but not limited to (a) furniture, fixtures, and equipment used in the Debtor's business operations; (b)the Debtor's interest in the D.C. Lease; (c) trademarks, copyrights, trade secrets, know-how and other intellectual property; and (d) licenses and permits.

1.2.6.  *Available Cash* means 80% of the cash or cash equivalents generated by the Debtor through its business operations, after payment of fees and expenses incurred in the ordinary course of business, including, but not limited to, debt service, lease payments, taxes, utility expenses, and employee salaries, plus proceeds from recovery of avoidable transfers.

1.2.7.  *Avoidance Actions* means all claims and causes of action the Debtor may have under §§ 502, 510, 541, 542, 544, 545, 547 through 551 and 553 of the Bankruptcy Code or under related state or federal statutes and common law, including fraudulent transfer laws.

1.2.8.  *Bankruptcy Code* means the Bankruptcy Reform Act of 1978, as amended and codified in title 11 of the United States Code, 11 U.S.C. §101, et *seq.*

1.2.9.  *Bankruptcy Court* means the United States Bankruptcy Court for the District of Columbia.

1.2.10. *Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

1.2.11. *D.C. Lease* means that certain lease agreement by and between John Hancock Life Insurance Company (U.S.A.) (f/k/a The Manufacturers Life Insurance Company (U.S.A.)), a wholly owned subsidiary of Manulife Financial Corporation and the Debtor dated July 19, 1991, as amended by that certain Lease Modification & Amendment Agreement dated as of July 19, 1991, and as further modified by that Second Lease Modification & Amendment Agreement dated as of June 1, 1992, and as further amended by that certain Third Lease Modification & Amendment Agreement dated as of May 10, 2002, and as further amended by that certain Fourth Lease Modification & Amendment Agreement dated as of March 29, 2013 for the premises located at the first floor of 1100 New York Avenue, N.W., Washington, D.C.

1.2.12. *Business Day* means any day other than a Saturday, Sunday or any "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.2.13. *Cash* means legal tender of the United States of America or a cash equivalent.

1.2.14. *Chapter 11 Case* means the case commenced by the Debtor under chapter 11 of the Bankruptcy Code and captioned as *In re Capital City Brewing Company, L.C.* (Case No. 18-00161-SMT).

1.2.15. *Claim* means "claim" as defined in § 101(5) of the Bankruptcy Code, whether or not asserted or Allowed.

1.2.16. *Claims Bar Date* means (a) July 27, 2018, the deadline established by the Bankruptcy Court as the last day by which Claims of non-governmental Entities must be filed, or (b) September 10, 2018, the deadline established by the Bankruptcy Court as the last day by which Claims of governmental Entities must be filed.

1.2.17. *Class* means those certain groups of similar Claims and Equity Interests as set forth in Article III herein.

1.2.18. *Closing Order* means the final decree issued by the Bankruptcy Court under § 350(a) of the Bankruptcy Code and Rule 3022 of the Bankruptcy Rules closing the Chapter 11 Case.

1.2.19. *Committee* means the Official Committee of Unsecured Creditors, consisting of J.J. McDonnell & Co., Barmetrix of DC, and Coastal Sunbelt Produce Company.

1.2.20. *Confirmation Date* means the date upon which the Confirmation Order is entered.

149159142.1

1.2.21. _Confirmation Hearing_ means the hearing, pursuant to § 1129 of the Bankruptcy Code, to consider confirmation of the Plan.

1.2.22. _Confirmation Order_ means the order entered by the Bankruptcy Court confirming this Plan.

1.2.23. _Cure_ means the distribution, prior to or within a reasonable period of time following the Effective Date, of Cash or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease pursuant to § 365(b) of the Bankruptcy Code, in an amount agreed upon by the parties or ordered by the Bankruptcy Court, in payment of all unpaid monetary obligations, without interest, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

1.2.24. _Debtor_ means Capital City Brewing Company, L.C.

1.2.25. _Disallowed Claim_ means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order of the Bankruptcy Court, or (b) has not been scheduled by the Debtor or is scheduled at zero or as contingent, disputed or unliquidated and as to which the Claims Bar Date has passed but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.2.26. _Disclosure Statement_ means the written disclosure statement that relates to this Plan, as approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules, as such disclosure statement may be amended, modified or supplemented from time to time.

1.2.27. _Disputed Claim_ means a Claim, or any portion thereof, of the type described, that is neither an Allowed Claim nor a Disallowed Claim, and includes, without limitation, Claims that (a) (i) have not been scheduled by the Debtor or have been scheduled at zero, as unknown or as contingent, unliquidated or disputed and are the subject of a timely filed proof of claim, or (ii) are the subject of an objection by the Debtor or as to which the time for the Debtor to object has not yet expired, and (b) the allowance or disallowance of which is not yet the subject of a Final Order of the Bankruptcy Court.

1.2.28. _Disputed Equity Interest_ means any Equity Interest that has not become an Allowed Equity Interest.

1.2.29. _Effective Date_ means the thirtieth (30th) day after the date on which the Confirmation Order becomes a Final Order or such earlier date following the Confirmation Date that the Reorganized Debtor, in its sole discretion, may establish.  If the above date is a Saturday, Sunday or a legal holiday, the Effective Date shall be the next Business Day thereafter.

149159142.1

1.2.30. _Entity_ means "entity" as defined in § 101(15) of the Bankruptcy Code.

1.2.31. _Equity Interest_ means, as of the Petition Date, any right or interest in the Debtor represented by, related to or arising out of the ownership of any equity interest or security in the Debtor, including, without limitation, all membership interests in the Debtor.

1.2.32. _Estate_ means the bankruptcy estate of the Debtor pursuant to § 541 of the Bankruptcy Code.

1.2.33. _Final Order_ means an order (a) as to which no appeal or other proceeding for review, reargument or rehearing has been requested or is then pending and the time to file any such appeal or other proceeding for review, reargument or rehearing has expired; (b) as to which any right to appeal, or other proceedings for review, reargument or rehearing shall have been waived in writing in form and substance satisfactory to the Debtor; or (c) if an appeal or other proceeding for review, reargument or rehearing has been requested or is then pending, such order has not been either reversed or stayed.

1.2.34. _Internal Revenue Code_ means the Internal Revenue Code of 1986, as amended.

1.2.35. _Landlord_ means John Hancock Life Insurance Company (U.S.A.) (f/k/a The Manufacturers Life Insurance Company (U.S.A.)), a wholly owned subsidiary of Manulife Financial Corporation, its successors and assigns.

1.2.36. _Legal Interest Rate_ means 2.08%, the federal post-judgment interest rate in effect on the Petition Date, as set forth in 28 U.S.C. §1961.

1.2.37. _Person_ means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

1.2.38. _Petition Date_ means March 14, 2018, the date on which the Debtor filed its bankruptcy petition with the Bankruptcy Court, thereby commencing this Chapter 11 Case.

1.2.39. _Plan_ means this plan which is proposed jointly by the Debtor and the Committee for the resolution of outstanding Claims and Equity Interests in this Chapter 11 Case, as such Plan may be amended or modified from time to time in accordance with the Bankruptcy Code and the terms hereof.

1.2.40. _Priority Claim_ means a Claim, if any, entitled to priority pursuant to § 507(a) of the Bankruptcy Code.

1.2.41. _Priority Tax Claim_ means a Claim, if any, entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.

5

1.2.42. _Professional_ means a professional person of the types identified in § 327 of the Bankruptcy Code whose employment has been approved by the Bankruptcy Court.

1.2.43. _Professional Fee Claim_ means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered on behalf of the Debtor on and after the Petition Date and prior to and including the Effective Date.

1.2.44. _Reorganized Debtor_ means the Debtor on and after the Effective Date.

1.2.45. _Treasury Regulations_ means all final, temporary and proposed regulations promulgated under the Internal Revenue Code of 1986, as amended.

1.2.46. _Unsecured Claim_ means a Claim other than a Secured Claim, Administrative Expense Claim, Priority Claim, or Professional Fee Claim.

1.2.47. _Value_ means, as of any measurement date, (a) with respect to Cash, the amount of such Cash and (b) with respect to any other assets, the fair market value of such assets as determined by a person qualified to value such assets or by the Bankruptcy Court.

1.2.48 _Virginia Lease_ means that certain Deed of Lease dated April 4, 1996, as Amended, Assigned, Extended and Modified between Street Retail, Inc. and the Debtor for the premises located at The Village at Shirlington, Store Number 24 and 24A, 4001 Campbell Avenue, Arlington, Virginia 22206.

1.3.    **Rules of Interpretation.** Unless otherwise specified, all references in the Plan to Sections, Articles, Schedules and Exhibits are references to Sections, Articles, Schedules and Exhibits of or to the Plan. Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. Except for the rule contained in § 102(5) of the Bankruptcy Code, the rules of construction set forth in § 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply to the Plan.

1.4.    **Computation of Time.** In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. Unless expressly prohibited under the Plan, all time periods and deadlines set forth herein shall be subject to enlargement in accordance with Bankruptcy Rule 9006(b) and may be reduced in accordance with Bankruptcy Rule 9006(c).

1.5.    **Exhibits**. All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein.

## ARTICLE II - TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS

2.1.    **Classification of Administrative Expense Claims**. Administrative Expense Claims have not been classified and are excluded from the classes set forth in Article III of the Plan, in accordance with § 1123(a)(1) of the Bankruptcy Code.

2.2.    **Treatment of Allowed Administrative Expense Claims** Except to the extent that the holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on or before the later of (i) the Effective Date or (ii) the fifteenth day of the first month following the month in which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, *provided, however,* that Allowed Administrative Expense Claims representing obligations incurred in the ordinary course of the Debtor's business or taxes incurred by the Debtor that are Administrative Expense Claims under § 503(b)(1) of the Bankruptcy Code shall be paid in full in accordance with the terms and conditions of the particular transactions, any applicable agreements, and applicable bankruptcy and non-bankruptcy law. All Disputed Administrative Expense Claims shall be reserved for in full on the Effective Date. Payment of Allowed Administrative Expense Claims on the Effective Date shall be made from Available Cash and such other available and permitted sources hereunder.

2.3.    **Administrative Expense Claim Bar Date**. Requests for payment of Administrative Expense Claims existing as of the Confirmation Date must be filed with the Bankruptcy Court and served on the Reorganized Debtor no later than forty-five (45) days after the Effective Date. Objections to payment of Administrative Expense Claims must be filed with the Bankruptcy Court and served on the holder of such Administrative Expense Claim, the Reorganized Debtor and the U.S. Trustee by the later of (i) thirty (30) days after the Effective Date or (ii) thirty (30) days after the filing of the applicable request for payment of such Administrative Expense Claim, unless otherwise ordered or extended by the Bankruptcy Court. Notwithstanding anything to the contrary herein, no request for payment of an Administrative Expense Claim need be filed with the Bankruptcy Court for the allowance of (a) an Administrative Expense Claim incurred in the ordinary course of the Debtor's business or (b) the fees of the United States Trustee arising under 28 U.S.C. § 1930(a)(6). **Any Entity that is required to, but fails, to file a request for allowance of an Administrative Expense Claim on or before the deadline referenced above shall be forever barred from asserting such Administrative Expense Claim against the Reorganized Debtor, and the holder thereof shall be enjoined from commencing or continuing any action, employment of process, or act to collect, offset, or recover amounts asserted against the Reorganized Debtor in such Administrative Expense Claim.**

2.4.    **Professional Fee Claims**. All Professionals seeking an award by the Bankruptcy Court of a Professional Fee Claim incurred through and including the Effective Date shall, unless otherwise ordered by the Bankruptcy Court, file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is no later than forty-five (45) days after the Effective Date. Professional Fee Claims shall be paid by the Reorganized Debtor pursuant to the provisions in § 2.2 of this Plan with respect to Allowed Administrative Expense Claims generally.

149159142.1

2.5. **Priority Tax Claims**. Each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Reorganized Debtor, in full satisfaction, settlement, release and discharge of, and in exchange for, such Allowed Priority Tax Claim, one of the following treatments: (i) Cash in an amount equal to such Allowed Priority Tax Claim on the later of thirty (30) days after the Effective Date and the first (1st) Business Day that is thirty (30) days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (ii) such other treatment as to which the Debtor and a holder of an Allowed Priority Tax Claim shall have agreed upon in writing.

## ARTICLE III - CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to § 1122 of the Bankruptcy Code, a designation of Classes of Claims against and Equity Interests in the Debtor is set forth below.  A Claim or Equity Interest is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan, *but only to the extent* that such Claim or Equity Interest is an Allowed Claim or Equity Interest in that Class and such Claim or Equity Interest has not been paid, released or otherwise settled prior to the Effective Date.   In accordance with §  1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims of the kinds specified in §§ 507(a)(2) and 507(a)(8) of the Bankruptcy Code have not been classified, and their treatment is set forth in Article II above.

3.1.    **Class 1**. Class 1 consists of Allowed Priority Claims, other than Administrative Expense Claims, Priority Tax Claims, and Professional Fee Claims.

3.2.    **Class 2**. Class 2 consists of Allowed Unsecured Claims.

3.3    **Class 3**. Class 3 consists of the claim of Urban Adventures of Washington, D.C., Inc. for management fees for the Debtor from October 1, 2017 forward.

3.3.    **Class 4**. Class 4 consists of Allowed Equity Interests.

3.4.    **Elimination of Classes for Voting Purposes.** Any Class of Claims or Equity Interests that is not populated as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or an Allowed Equity Interest, as applicable, or a Claim or Equity Interest, as applicable, in such Class temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, shall be deemed deleted from the Plan for purposes of voting to accept or reject the Plan by any such Class under § 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IV - IDENTIFICATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS IMPAIRED AND UNIMPAIRED BY THE PLAN

4.1.    **Unimpaired Classes of Claims and Equity Interests**. Class 1 and Class 4 are unimpaired classes under the Plan.

4.2.    **Impaired Class of Claims**. Classes 2 and 3 are impaired classes under the Plan.

8

## ARTICLE V - TREATMENT OF CLAIMS AND EQUITY INTERESTS

5.1.    The Classes of Allowed Claims and Equity Interests will receive the following treatments under the Plan.

5.1.2.   **Class 1 (Priority Claims)**. Each holder of an Allowed Class 1 Claim shall be paid as follows: (i) in Cash in an amount equal to such Allowed Class 1 Claim, on the later of the Effective Date or thirty (30) days after any such claim becomes an Allowed Priority Claim, or (ii) upon such other less favorable terms as may be agreed to by the holder of such Allowed Priority Claim and the Reorganized Debtor.  Class 1 is unimpaired by the Plan.

5.1.3.   **Class 2 (Unsecured Claims)**. Each holder of an Allowed Class 2 Claim shall be paid as follows: (i) 7.5% of the allowed Class 2 Claim, on the later of thirty (30) days after Plan Confirmation, or  thirty (30) days after such claim becomes an allowed Class 2 Claim, and thereafter, each holder of an allowed Class 2 claim shall be paid its proportionate share of Available Cash for each six (6) month period commencing thirty (30) days after Plan Confirmation, and continuing through March 31, 2023, or (ii) upon such other less favorable terms as may be agreed to by the holder of such Allowed Unsecured Claim and the Reorganized Debtor. Class 2 is impaired by the Plan.  Class 2 is impaired by the Plan.

5.1.4   **Class 3 (Claim of Urban Adventures of Washington, DC, Inc. for Deferred Management Fees from October 1, 2017).**   No distribution will be paid on the Allowed Class 3 Claim, as the claim is being waived.  Further the management fee to Urban Adventures of Washington, DC, Inc. will be permanently reduced by one-half to 1.85% of gross revenues.

5.1.5.   **Class 4 (Equity Interests)**. Upon the Effective Date, each holder of an Allowed Class 4 Equity Interest shall retain such Equity Interest held in the Debtor as of the Petition Date.  Holders of Equity Interests shall receive their proportion of any Available Cash on account of such Equity Interests after payment of allowed administrative expenses and the completion of distributions to holders of Class 1 and Class 2 claims as provided in the Plan. Class 4 is unimpaired by the Plan.

## ARTICLE VI - ACCEPTANCE OR REJECTION OF THE PLAN

6.1.    **Impaired Class of Claims Entitled to Vote**. The holders of Claims in the impaired Class of Claims are entitled to vote as a class to accept or reject the Plan.  Class 2 (Unsecured Claims) is impaired by the Plan and are thus entitled to vote to accept or reject the Plan.

6.2.    **Presumed Acceptance by Unimpaired Classes**. Claims in Class 1 (Priority Claims) and Class 4 (Equity Interests) are unimpaired by the Plan.  Under § 1126(f) of the

9

Bankruptcy Code, the holders of such Claims are conclusively presumed to accept the Plan, and the votes of such holders will not be solicited.

6.3.  **Classes Deemed to Reject Plan.** Class 3 will receive no distributions under the Plan.  Under § 1126(g) of the Bankruptcy Code, the holders of such Claims are conclusively presumed to reject the Plan, and the votes of such holders will not be solicited.

6.4  **Elimination of Classes.** Any Class of Claims that does not consist, as of the date of the Confirmation Hearing, of at least one Allowed Claim, Disputed Claim, or temporarily Allowed Claim under Rule 3018 of the Bankruptcy Rules, shall be deleted from this Plan for all purposes.

6.5.  **Confirmability and Severability of the Plan.** The confirmation requirements of § 1129 of the Bankruptcy Code must be satisfied with respect to the Plan.  The Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan prior to the Confirmation Hearing upon notice to creditors and other parties in interest.  A determination by the Bankruptcy Court that the Plan is not confirmable pursuant to § 1129 of the Bankruptcy Code shall not limit or affect the Debtor's ability to modify the Plan to satisfy the confirmation requirements of § 1129 of the Bankruptcy Code.

## ARTICLE VII - MEANS FOR EXECUTION OF THE PLAN

7.1.  **Property Transferred to the Reorganized Debtor.** On the Effective Date, all Assets of the Debtor shall be deemed to be the property of and vest in the Reorganized Debtor, free and clear of all liens, claims, encumbrances or interests.  Upon and after the Effective Date, the Reorganized Debtor shall have all powers provided for under this Plan and the Confirmation Order and shall have all of the powers of a trustee under the Bankruptcy Code.

7.2.  **Funding of the Plan.** The Plan shall be funded by the Available Cash from the operations of the Debtor's business and from the recovery of an avoidable transfer to Urban Adventures of Washington, DC.

7.3.  **Causes of Action.** All claims and causes of action held by the Debtor shall vest in the Reorganized Debtor on the Effective Date and the Reorganized Debtor shall have full power and authority to pursue such claims and causes of action for the benefit of its creditors. The proceeds of all claims and causes of action shall be deemed to be Available Cash and shall be administered pursuant to the provisions of this Plan.  Settlements of claims and causes of action shall not be subject to approval by the Bankruptcy Court. Avoidance Actions (i) shall survive entry of the Confirmation Order, (ii) shall vest in the Reorganized Debtor, and (iii) shall not be barred or limited by estoppel, whether judicial, equitable, or otherwise.

7.4  **Recoveries from Avoidable Transfers**

The Debtor has made a demand upon Urban Adventures of Washington, DC for recovery of a transfer that is avoidable, and Urban Adventures of Washington, DC has agreed to return the amount of that transfer, $69,388.59 within fifteen (15) days of the Effective Date.  The Debtor

has analyzed the potential recoveries from other avoidable transfers.  The potential recoveries would be from trade creditors are necessary to the Debtor's post-confirmation operation.  As a result, the Debtor will not further pursue Avoidance Actions.

**ARTICLE VIII – DISTRIBUTIONS**

8.1.     **Reorganized Debtor**.  The Reorganized Debtor shall have all rights, duties and powers set forth in the Plan, including, without limitation, the duty to review and object to Claims and make distributions pursuant to the terms of this Plan and the Confirmation Order. The Reorganized Debtor shall have all the powers of a trustee under the Bankruptcy Code.  On the Effective Date, the Reorganized Debtor may employ counsel and other professionals as may be reasonably necessary for its operations and to execute the Plan without the necessity of application to the Bankruptcy Court.  Such professionals may be retained and compensated for post-Effective Date services in the ordinary course without the necessity of application to the Bankruptcy Court.

8.2.     **Distributions**.  On or before the Effective Date, the Debtor will distribute Available Cash in the approximate amount of $145,000.00 in accordance with the provisions of this Plan.  Of this sum: $20,300 will be paid to the landlord under the Virginia Lease for administrative rent from the date of filing to the date of surrender of possession and deemed rejection of that Lease; $8,105.53 will be paid to Arlington County, Virginia for a priority tax obligation; and $47.228.61 will be paid to Sysco Baltimore, LLC for its priority claim.  Then, each holder of an Allowed Class 2 claims will receive 7.5% .  Thereafter, distributions of the 80% of Available Cash that accrued over each successive six (6) month period from the Date of Confirmation shall be made pro rata to the holders of the Allowed Class 2 Claims as soon as practicable after the end of such six-month period.  The business will cease operations effective March 31, 2023, the expiration date of the D.C. Lease.

8.3.     **Delivery of Distributions**.  Subject to Bankruptcy Rule 9010, unless otherwise provided herein, all distributions to any holder of an Allowed Claim or Equity Interest shall be made at the address of such holder as set forth on the bankruptcy schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, unless the Debtor has been notified, in advance and, in writing, of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on such schedules for such holder.  In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Reorganized Debtor has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution shall be made to such holder; *provided, however,* that such distributions shall be deemed unclaimed property under § 347(b) of the Bankruptcy Code at the expiration of one (1) year from the later of (i) the Effective Date or (ii) the date such holder's Claim or Equity Interest is Allowed.  After such date, all unclaimed property shall revert to the Reorganized Debtor.  The Reorganized Debtor shall not have any obligation to attempt to locate any holder of an Allowed Claim or Equity Interest other than by reviewing its books and records (including any proofs of claim or interest filed in the Chapter 11 Case).

8.4.    **Stop Payments; Minimum Distribution; Unclaimed Funds**. The Reorganized Debtor may stop payment on any distribution check that has not cleared the payer bank within ninety (90) days of the date of distribution of such check.  No distribution under the sum of $10.00 is required to be made by the Reorganized Debtor.

8.5.    **United States Trustee Fees.** Any fees payable under 28 U.S.C. § 1930 accruing after the Effective Date shall be timely paid by the Reorganized Debtor.

8.6.    **Distribution Reports.** The Reorganized Debtor shall timely file with the Court periodic distribution reports as required by the United States Trustee detailing the amounts distributed pursuant to this Plan and shall serve such reports on the Office of the United States Trustee.

8.7.    **Disallowance of Certain Charges.** All penalties, default interest or late fees that may have accrued on any Claim prior to the Confirmation Date are disallowed.

## ARTICLE IX - EFFECT OF CONFIRMATION

9.1.    **Binding Effect**. On and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Reorganized Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

9.2.    **Discharge.** Except as otherwise provided in the Plan or the Confirmation Order: (i) on the Effective Date, the Reorganized Debtor shall be deemed discharged and released pursuant to § 1141 of the Bankruptcy Code from all Claims and interests, including, but not limited to, demands, liabilities, Claims and interests that arose before the Effective Date and all debts of the kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a proof of Claim based on such Claim or debt has been filed or deemed filed pursuant to § 501 of the Bankruptcy Code, (b) a Claim based on such Claim or debt is allowed pursuant to § 502 of the Bankruptcy Code, or (c) the holder of such a Claim has accepted the Plan; and (ii) all Persons shall be precluded from asserting against the Reorganized Debtor, its successors, or its Assets any other or further Claims based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.  Except as otherwise provided herein, confirmation of the Plan shall void any judgment against the Debtor at any time obtained to the extent that it relates to a Claim discharged hereby.

9.3.    **Continuation of Injunctions and Stays.** Except as otherwise provided herein or in the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold or may hold a debt or Claim against the Debtor or the Reorganized Debtor or its Assets are permanently enjoined from taking any of the following actions on account of any such debt or Claim: (i) commencing or continuing in any manner any action or other proceeding against the Debtor, the Reorganized Debtor or its successors or assigns or its Assets; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award,

12

decree or order against the Debtor, the Reorganized Debtor or its successors or assigns or its Assets; (iii) creating, perfecting or enforcing any lien or encumbrance against the Debtor, the Reorganized Debtor or its successors or assigns or its Assets; and (iv) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Provided the Reorganized Debtor is not in material breach of its obligations under the Plan, the injunctive relief granted herein to the Debtor and the Reorganized Debtor is likewise granted to any co-obligor or guarantor of any debts or obligations of the Debtor. Any Person, including but not limited to the Debtor or the Reorganized Debtor, injured by any willful violation of any injunction imposed by the Plan or Confirmation Order shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

9.4 **Post-Confirmation Governance.** Until the Effective Date, the Debtor shall operate in a manner consistent with the preservation of the value of its business. Nothing herein or in the Confirmation Order, including any releases, shall diminish or impair the enforceability of any policy of insurance that may cover claims against the Debtor or any other Entity. Each of the matters provided for under this Plan involving the business structure of the Reorganized Debtor or action to be taken by or required of the Reorganized Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by the manager of the Reorganized Debtor. The Reorganized Debtor shall operate under its current name under the organizational documents issued by the Commonwealth of Virginia.

## ARTICLE X - PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

10.1. **Objections to and Estimation of Claims and Equity Interests; Prosecution of Disputed Claims and Equity Interests.** The Reorganized Debtor may file with the Bankruptcy Court an objection to the allowance of any Claim or Equity Interest, or any other appropriate motion or adversary proceeding with respect thereto. All such objections will be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle, withdraw or resolve by any other method approved by the Bankruptcy Court, any such objections to the allowance of such Claims or Equity Interests. In addition, the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Claim under § 502(c) of the Bankruptcy Code, regardless of whether such Claim has been previously objected to or whether the Bankruptcy Court has ruled on any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will be limited to the purposes (such as voting on this Plan) determined by the Bankruptcy Court. All of the aforementioned provisions with respect to objections to Claims or Equity Interests and the claims estimation and resolution procedures, are cumulative and are not necessarily exclusive of one another.

10.2. **No Distributions Pending Allowance.** Notwithstanding any other provision of the Plan to the contrary, no distribution shall be made to the holder of a Disputed Claim or Equity Interest or the holder of a Claim or Equity Interest that is the subject of a proceeding

149159142.1

against it by the Reorganized Debtor unless and until such Disputed Claim or Equity Interest becomes an Allowed Claim or Equity Interest by Final Order.  While disputes regarding Claims or Equity Interests are pending, the Reorganized Debtor shall hold for the benefit of each holder of a Disputed Claim or Equity Interest an amount equal to the distributions that would have been made to the holder of such Disputed Claim or Equity Interest if it were an Allowed Claim or Equity Interest, or, if so determined by the Bankruptcy Court, such amount as estimated by the Bankruptcy Court under § 502(c) of the Bankruptcy Code, until such Claim or Equity Interest becomes an Allowed Claim or Equity Interest.

10.3.  **Distributions After Allowance.** As soon as practicable after a Disputed Claim or Equity Interest becomes an Allowed Claim or Equity Interest, the holder of such Allowed Claim or Equity Interest shall receive all distributions to which such holder is then entitled under the Plan on account of such Allowed Claim or Equity Interest.  Any Entity who holds both an Allowed Claim or Equity Interest and a Disputed Claim or Equity Interest shall receive the appropriate distribution on the Allowed Claim or Equity Interest, although no distribution will be made on the Disputed Claim or Equity Interest until such dispute is resolved by settlement or Final Order.  After resolution of a dispute, any cash previously reserved for such Disputed Claim or Equity Interest and not paid in connection with the resolution thereof shall be distributed in accordance with the terms of this Plan.

## ARTICLE XI - LEASES AND EXECUTORY CONTRACTS

11.1.  **Assumption and Rejection of Lease Agreements**. Assumption of the D.C Lease was approved pursuant to an Order entered on August 19, 2018 [Docket No. 84].  The Virginia Lease between the Debtor and Street Retail, Inc. was rejected by the Debtor pursuant to an Order entered on August 19, 2018 [Docket No. 83]. The rejection of the Virginia Lease is effective as of March 27, 2018.

11.2.  **Rejection Pursuant to the Confirmation Order.** Except as otherwise provided herein, the Confirmation Order shall automatically constitute an order approving the rejection, as of the Effective Date, of all other executory contracts and unexpired leases of the Debtor that existed on the Petition Date except for (i) any executory contracts or unexpired leases which the Debtor (a) rejected, (b) assumed, or (c) assumed and assigned to third parties on or before the Effective Date; or (ii) any executory contracts or unexpired leases which are the subject of a motion to (a) reject, (b) assume, or (c) assume and assign filed prior to the Effective Date that has not been ruled upon by the Bankruptcy Court as of the Effective Date.

11.3.  **Claims Arising from Rejection.** Unless the time for filing Claims is otherwise fixed by the Bankruptcy Court, all Claims arising from the rejection of executory contracts or unexpired leases shall be filed and served upon the Reorganized Debtor and the United States Trustee within thirty (30) days after the later of (i) entry of a Final Order authorizing such rejection or (ii) the date on which the Confirmation Order becomes a Final Order.  Any such claim not filed within the required time period shall be time-barred and shall not be an Allowed Claim.

14

11.4    **Insurance Policies.**  Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtor will assume (and assign to the Reorganized Debtor if necessary to continue the Insurance Policies in full force) all of the insurance policies pursuant to section 365(a) of the Bankruptcy Code.   Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption and assignment of each of the Insurance Policies.

## ARTICLE XII – MODIFICATION

12.1.    **Pre-confirmation Amendment**. The Debtor reserves the right in accordance with the Bankruptcy Code to amend or modify this Plan prior to the Confirmation Date.  After the Debtor files a modification with the Court, this Plan, as modified, becomes the Plan.

12.2.    **Post-confirmation Modification**. The Reorganized Debtor may modify this Plan at any time after the Confirmation Date regardless of whether this Plan has been substantially consummated within the meaning of §§ 1101(2) and 1127(b) of the Bankruptcy Code, if circumstances warrant such modification, if all required disclosure under § 1125 of the Bankruptcy Code has been given, and the Court, after notice and a hearing, confirms the Plan as modified.

12.3.    **Correction of Errors; Inconsistencies.** Before or after the Confirmation Date, or in the Confirmation Order, the Reorganized Debtor may, with the approval of the Court, so long as it does not materially and adversely affect the interests of creditors who have accepted this Plan, remedy any defect or omission, or reconcile any inconsistencies in this Plan or amend this Plan, in such a manner as may be necessary to carry out the purposes and the effect of this Plan without the necessity of re-soliciting acceptances.

## ARTICLE XIII - CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

13.1.    **Confirmation Conditions Precedent.** Confirmation is subject to:

(i)    The Bankruptcy Court having approved the Disclosure Statement by order entered on the docket of the Chapter 11 Case; and

(ii)    The presentment of a Confirmation Order to the Bankruptcy Court in the Chapter 11 Case for entry to confirm the Plan.

13.2.    **Effective Date Conditions Precedent.** The occurrence of the Effective Date is subject to:

(i)    The Confirmation Order becoming a Final Order;

(ii)    The receipt of the Equity Infusion by the Debtor; and

(iii)    No stay of the Confirmation Order shall then be in effect.

15

## ARTICLE XIV - MISCELLANEOUS PROVISIONS

14.1. **Headings**. The headings used herein are inserted for convenience only and neither constitute a substantive portion hereof nor in any manner affect the provisions hereof.

14.2. **Business Day**. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

14.3. **Timing**. Wherever the Plan provides that a payment or distribution shall occur "on" any date, it shall mean "on, or as soon as practicable after" such date.

14.4. **Manner of Payment**. Any payment made under the Plan may be made either by check or by wire transfer.

14.5. **Authorization of Business Action**. The occurrence of the Effective Date shall constitute Bankruptcy Court authorization for the Reorganized Debtor to take or cause to be taken any business action necessary or appropriate after the Effective Date for the effectuation of the Plan and such action will be authorized and approved in all respects and for all purposes without any requirement of further action by any other Person.

14.6. **Exculpation**. Neither the Reorganized Debtor nor any of its respective attorneys, advisors or agents shall have any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, or arising out of, this Chapter 11 Case, the administration or consummation of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence.

14.7. **Severability**. Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provisions of the Plan.

14.8. **Reservation of Rights**. Neither the filing of the Plan, nor any statement or provision contained in the Plan or the Disclosure Statement, shall be deemed to be a waiver of any rights, remedies, defenses or claims by the Debtor or the Reorganized Debtor, and all such rights, remedies, defenses or claims are hereby specifically reserved.

14.9. **Plan Controls**. To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall control.

14.10. **Notice**.

14.10.1. Any notices or requests made in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) commercial overnight delivery service, freight prepaid, and will be deemed to have been given when received by the following parties at the following addresses:

16

149159142.1

To the Debtor:

                    c/o Urban Adventures Companies, Inc.
                    Attn. David von Storch, President
                    1612 U Street, N.W.
                    Washington, DC 20009

With a copy to:      John P. Van Beek, Esq.
                    Neil D. Goldman, Esq.
                    GOLDMAN & VAN BEEK, P.C.
                    510 King Street, Suite 416
                    Alexandria, VA 22314

To the Committee:

                    Marc E. Albert, Esq.
                    Tracey M. Ohm, Esq.
                    Joshua W. Cox, Esq.
                    STINSON LEONARD STREET LLP
                    1775 Pennsylvania Ave., N.W., Suite 800
                    Washington, DC 20006

14.10.2. All notices, requests and distributions to any creditor or Equity Interest holder shall be sent to such Creditor or Equity Interest holder at the address given in each creditor's proof of claim or each Equity Interest holder's proof of interest. With regard to those scheduled creditors or Equity Interest holders who did not file a proof of claim or interest, all notices, requests and distributions shall be sent to such Creditor or Equity Interest holder at the address listed in the Debtor's schedules, unless the Reorganized Debtor receives other instructions in writing from such creditor(s) or Equity Interest holder(s). Notices, requests and distributions to creditors or Equity Interest holders shall be deemed to have been given when mailed to such address or deposited with a commercial overnight delivery service. It shall be the obligation of creditors or Equity Interest holders to provide written notice of any change in address to the Debtor or the Reorganized Debtor.

14.11. **United States Trustee Fees**. All fees due and payable through the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid by the Reorganized Debtor when due under applicable statute.

14.12 **Other Documents and Actions**. The Debtor and/or the Reorganized Debtor may execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

14.13. **Successors and Assigns**. The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

17

14.14. **Post-Effective Date Effect of Evidences of Claims or Equity Interests**. Except as otherwise expressly provided in the Plan, notes, bonds, membership certificates and other evidences of Claims against or Equity Interests in the Debtor shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan or the retention of Equity Interests under the Plan.

14.15. **Governing Law**. Unless a rule of law or procedure is supplied by (i) Federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia without giving effect to the principles of conflict of laws thereof.

14.16. **Confirmation Pursuant to §§ 1129(a)(10) and 1129(b) of the Bankruptcy Code**. Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of confirmation by acceptance of the Plan by an impaired Class. If the class of Claims entitled to vote on the Plan does not accept the Plan pursuant to § 1126(c), the Debtor reserves the right to request confirmation of the Plan under § 1129(b) of the Bankruptcy Code and to modify the Plan to the extent, if any, that confirmation pursuant to § 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE XV - RETENTION OF JURISDICTION

15.1. The Bankruptcy Court shall retain jurisdiction after confirmation of the Plan for the following purposes:

(i)    to determine the allowance and classification of any Claim or Equity Interest, the reexamination of Claims or Equity Interests which have been allowed for purposes of voting, and the determination of any objections to Claims or Equity Interests that may be or may have been filed;

(ii)    to determine motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

(iii)    to determine motions to subordinate Claims or Equity Interests at any time and on any basis permitted by applicable law;

(iv)    to construe or take any action to enforce this Plan and to issue such orders as may be necessary for the implementation, execution, and consummation of this Plan;

(v)    to determine any and all applications for allowance of compensation or reimbursement of expenses of Professionals;

(vi)      to determine any other requests for payment of Administrative Expense Claims;

(vii)     to resolve any disputes arising under or relating to this Plan;

(viii)    to modify the Plan pursuant to § 1127 of the Bankruptcy Code and applicable Bankruptcy Rules;

(ix)      to take any action to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of this Plan;

(x)       to enter any order, including injunctions, necessary to enforce the rights, title and powers of the Debtor or the Reorganized Debtor and to impose such limitations, restrictions, terms and conditions of such rights, title and powers as the Bankruptcy Court may deem necessary;

(xi)      to enforce any order previously entered by the Bankruptcy Court in this case and to enter the Closing Order;

(xii)     to determine pending applications for the assumption or rejection of executory contracts or unexpired leases to which a Debtor is a party or with respect to which a Debtor may be liable, and to hear and determine, and if need be to adjudicate, any and all Claims arising therefrom;

(xiii)    to determine applications, adversary proceedings and contested or litigated matters and all causes of action, whether pending on the Effective Date or commenced thereafter;

(xiv)     to issue orders in aid of execution of the Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(xv)      to determine such other matters as may be set forth in the Confirmation Order;

(xvi)     to consider and act on the compromise and settlement of any Claim against, or cause of action on behalf of, the Debtor or its Estate;

(xvii)    to enter such orders as may be necessary or appropriate in connection with the Debtor, Reorganized Debtor or the Assets, wherever located;

(xviii)   to hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar and related matters with respect to the Debtor arising prior to the Effective Date or relating to the administration of the Chapter 11 Case, including, without limitation, matters involving Federal, state and local taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

149159142.1

(xix)     to enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with this Chapter 11 Case or the Plan;

(xx)      to enter such orders as may be necessary or appropriate to aid confirmation of and to facilitate implementation of the Plan; and

(xxi)     to determine any matter not inconsistent with the Bankruptcy Code or Plan.

## ARTICLE XVI - ENTRY OF FINAL DECREE AND CLOSING OF CASE

Once the Reorganized Debtor has substantially performed all of the duties specified in the Plan and commenced making such payments to holders of Allowed Administrative Expense Claims and Allowed Claims as are contemplated in Articles II and V, it shall file a certification of full administration and apply for the entry of a final decree.

December__, 2018                              Respectfully submitted,

                                             CAPITOL CITY BREWING COMPANY, L.C.

                                             By: _____
                                             John P. Van Beek, No. 319103
                                             Neil D. Goldman, No. 943860
                                             GOLDMAN & VAN BEEK, P.C.
                                             510 King Street, Suite 416
                                             Alexandria, VA 22314
                                             Tel.: (703) 684-3260
                                             Fax: (703) 548-4742
                                             jvanbeek@goldmanvanbeek.com
                                             ngoldman@goldmanvanbeek.com
                                             *Counsel for Capitol City Brewing Company, L.C.*

                                             THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CAPITOL CITY BREWING COMPANY, L.C.

                                             By: _____
                                             Marc E. Albert, No. 345181
                                             Tracey M. Ohm, No. 982787
                                             Joshua W. Cox, No. 1033283
                                             STINSON LEONARD STREET LLP
                                             1775 Pennsylvania Ave., N.W., Suite 800

149159142.1

Washington, DC 20006
Tel.: (202) 785-9100
Fax: (202) 572-9948
marc.albert@stinson.com
*Counsel for the Official Committee of*
*Unsecured Creditors of Capitol City*
*Brewing Company, L.C.*

149159142.1